**Slip Op. 04-135**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                        :
TIMKEN U.S. CORPORATION and             :
TIMKEN NADELLAGER, GmbH,                 :
                                        :
          Plaintiff,                    :
                                        :       Court No.
          v.                            :       00-09-00454
                                        :
UNITED STATES,                          :
                                        :
          Defendant.                    :
_____:

[The United States Department of Commerce's <u>Remand Determination</u> is affirmed.  Case dismissed.]


<u>Stewart and Stewart</u> (<u>Terence P. Stewart</u> and <u>Geert De Prest</u>)for Timken U.S. Corporation and Timken Nadellager, GmbH, plaintiffs.

<u>Peter D. Keisler</u>, Assistant Attorney General, <u>David M. Cohen</u>, Director, <u>Jeanne E. Davidson</u>, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Claudia Burke</u>); of counsel: <u>Augusto A. Guerra</u>, Office of the Chief Counsel for Import Administration, United States Department of Commerce for the United States, defendant.

Dated:  October 29, 2004


**<u>OPINION</u>**


**I.   STANDARD OF REVIEW**

The  Court  will  uphold  the  United  States  Department  of Commerce's ("Commerce") redetermination pursuant to the Court's remand unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. §

1516a(b)(1)(B)(i) (1994).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the [same] evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

## II.  BACKGROUND

The relevant facts and procedural history in this case are set forth in the Court's remand opinion, Timken U.S. Corp. v. United States, 28 CIT ___, 318 F. Supp. 2d 1271 (2004).  A brief summary is included here.

Commerce published a final determination entitled Final Results of Antidumping Duty Administrative Reviews and Revocation of Orders in Part on Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, and the United Kingdom ("Final Results"), 65 Fed. Reg. 49,219 (Aug. 11, 2000).  The period of review covered by the Final Results is May 1, 1998, to April 30,

1999. See id. On June 15, 2001, the plaintiffs, Timken U.S. Corporation and Timken Nadellager, GmbH (collectively, "Timken") moved pursuant to USCIT R. 56.2 for judgment upon the agency record challenging one aspect of the Finals Results.[1] See Timken's Mem. Supp. R. 56.2 Mot. J. Upon Agency R. Specifically, at issue was whether Commerce properly rejected evidence submitted by Timken after the Final Results were published to correct an alleged error in the antidumping margin ("post-Final Results invoices").[2]

On March 5, 2004, this Court issued a remand order directing Commerce to further investigate the claims raised during the administrative proceeding with regards to the error committed by the plaintiffs in reporting home-market sales according to channels

---

[1] This action was originally brought by The Torrington Company and Torrington Nadellager GmbH in September 2000. See Summons ¶ 1. The Torrington Company was acquired by the Timken Company on Feb. 18, 2003, and is now known as Timken U.S. Corporation. Timken's German affiliate is now known as Timken Nadellageer, GmbH. See Disclosure of Corporate Affiliations & Fin. Interest at 1 (filed with this Court on Feb. 3, 2004).

[2] After the Final Results were published, Timken's antidumping margin was considerably higher than other companies in the review prompting Timken to re-examine its internal classification procedures and questionnaire responses submitted to Commerce. See Timken, 28 CIT __, 318 F. Supp. 2d at 1273-75. Claiming several internal mis-classification errors, Timken requested Commerce to change the published antidumping margin and offered invoices to substantiate its claim. See id. Commerce declined to accept these invoices. See id. Commerce found that the errors were not clerical in nature and the invoices were offered well beyond the administrative deadline for submitting new factual information. See id. Timken subsequently filed its 56.2 motion. See id.

of distribution for Timken and <u>make any corrections necessary</u> to attain the most accurate antidumping margin. <u>See</u> <u>Timken</u>, 28 CIT at ___, 318 F. Supp. 2d at 1279 (<u>emphasis added</u>). On June 7, 2004, Commerce submitted its Final Results of Redetermination Pursuant to Court Remand ("<u>Remand Determination</u>"). On July 7, 2004, Timken filed comments regarding the <u>Remand Determination</u>. <u>See</u> Pl.'s Comments on the Final Results of Redetermination Pursuant to Ct. Remand ("Timken's Comments"). Commerce then filed a response to Timken's comments on July 30, 2004. <u>See</u> Def.'s Resp. to Pl.' Comments Regarding the Dep't of Commerce's Remand Determination.

## III. DISCUSSION

Timken bears the burden of showing that the post-<u>Final Results</u> evidence changes the disputed channels of distribution ("Channels") classifications, thus changing the published antidumping margin. <u>See</u> <u>NTN Bearing Corp. of Am. v. United States</u>, 19 CIT 1165, 1174, 903 F. Supp. 62, 70 (1995) ("A party claiming a level-of-trade adjustment has the burden of proving entitlement to the adjustment."). The Channels and associated home-market sales reported by Timken, on a questionnaire during the administrative review process, determined the levels of trade ("LOT"), which was ultimately used to calculate the antidumping margin. <u>See</u> <u>Timken</u>, 28 CIT at ___, 318 F. Supp. 2d at 1273. Timken reported five Channels in its home-market sales listing, which Commerce grouped

into three LOT. See id. Channel 1 consisted of sales to large original equipment manufacturers ("OEMs") and was designated as LOT 1; Channels 2 and 3 consisted of sales to other OEMs and sales distributors, respectively, and was designated as LOT 2; and Channels 4 and 5 consisted of sales to OEMs and distributors, respectively, of an affiliated marketing entity and was designated as LOT 3. See id.; Remand Determination at 9-10. Timken alleges that three types of classification errors occurred. Accordingly, Timken argues that certain sales should be moved from Channel 1 into a different Channel.

### A. Commerce Properly Classified the Sales of Sample Units in Channel 1

#### 1. Timken's Contentions

Of the three classification errors in dispute, the first deals with products sold as sample or prototype units. See Remand Determination at 11. Timken asserts that these sample sales were mistakenly reported as sales to large OEMs and consequently classified in Channel 1. See Timken, 28 CIT at ___, 318 F. Supp. 2d at 1274; Timken's Comments at 6. Timken asserts that the sales are samples and were not purchased by customers to produce original equipment. See Remand Determination at 11. As evidence, Timken submitted invoices to Commerce which designate the sales at issue as samples and indicate delivery to the customer's prototype location. See id. Accordingly, Timken argues that these sales

should be reclassified into Channel 2 or 3. See Timken's Comments at 6.

Timken also argues that under World Finer Foods, Inc. v. United States, 24 CIT 541 (June 26, 2000), Commerce cannot "preempt correction by imposing evidentiary standards on the corrected submission which exceed what was required for the original (uncorrected) submission." Timken's Comments at 4. Timken states that the post-Final Results invoices are sufficient evidence to support reclassifying the sample sales to Channel 2 or 3. See id. at 4-5. Timken asserts that Commerce has impliedly required additional proof other than the post-Final Results invoices, contrary to World Finer Foods. See id.

### 2. Commerce's Contentions

Commerce explains that in determining whether home-market sales are at a different LOT than United States sales, it examines comparable stages in the marketing process and selling functions along the Channels. See Remand Determination at 7. After reviewing Timken's submissions, Commerce asserts that the sales of sample units are correctly classified in Channel 1. See id. at 11. Commerce notes that sample sales are described only in the Channel 1 classification (sales to large OEMs) and not in Channel 2 or 3 classifications. See id. at 11-12. Commerce argues that the invoices themselves further reiterate the original classification

made by Timken because the post-<u>Final Results</u> invoices are marked as sales for sample units.  <u>See</u> <u>id.</u> at 13.  Moreover, Commerce maintains that the original classification is accurate because Commerce verified Timken's questionnaire responses, including the descriptions of the marketing stages and selling functions associated with each LOT.  <u>See</u> <u>id.</u>  Commerce asserts that Timken has failed to produce evidence demonstrating that the sample units were not bought or later used to produce original equipment.  <u>See</u> <u>id.</u> at 14.

Furthermore, Commerce contends that it has not imposed a higher evidentiary standard.  <u>See</u> <u>Remand Determination</u> at 19-20. Rather, Commerce has conducted an analysis to determine whether record evidence supports reclassifying the disputed transactions into a different Channel.  <u>See</u> <u>id.</u> at 20.  Commerce argues that "[i]n accordance with [its] statutory obligation, [Commerce has] focused [its] analysis on the associated marketing stages and selling functions."  <u>Id.</u>; <u>see generally</u> 19 CFR § 351.412(c)(2) (1999).  Commerce determined that the record evidence, including the post-<u>Final Results</u> invoices, does not support a reclassification of the claimed errors.  <u>See</u> <u>Remand Determination</u> at 21.

Moreover, Commerce argues that Timken's application of <u>World Finer Foods</u> is without merit.  The Court's focus in that case was

the difference between verified and unverified submissions in an administrative review and here, Commerce verified Timken's questionnaire responses during the administrative review. See Remand Determination at 21. Courts must rely on the finality of verification findings, otherwise such findings could be attacked as less credible. See id. (citing FAG Kugelfischer Georg Schafer AG v. United States, 25 CIT 74, 106-7, 131 F. Supp. 2d 104, 133 (2001)). Here, Commerce verified Timken's questionnaire responses as part of the administrative review and properly relied upon the verification report during the redetermination. See id. Thus, Commerce concludes that reclassifying the sample sales would not obtain a more accurate dumping margin. See id.

### 3. Analysis

The Court finds that Commerce's determination regarding the post-Final Results invoices and Timken's questionnaire responses reasonably support the original classification. Timken argues that the post-Final Results invoices conclusively demonstrate that the sample sales should be classified into Channel 2 or 3. While "corrective" information submitted after the completed administrative review may contradict previously submitted questionnaire information, Timken confirmed the Channel descriptions during Commerce's verification. Accordingly, Timken's Channel descriptions must be considered credible because of the

Court's due deference given to verification reports.  See <u>FAG Kugelfischer</u>, 25 CIT at 106-7, 131 F. Supp. 2d at 133 (stating that not giving deference "would leave every verification effort vulnerable to successive subsequent attacks, no matter how credible the evidence and no matter how burdensome on the agency further inquiry would be") (citations omitted).  The Court will not supersede Commerce's conclusions if Commerce reasonably verifies the information submitted during the administrative review and the verification is supported by substantial evidence.  See <u>id.</u> Submissions made after the <u>Final Results</u> are issued are an attempt to reclassify specific sales into a different Channel, not to change the Channel descriptions.[3]  Merely submitting invoices marked as sample sales does not fulfill Timken's burden.  Such evidence fails to adequately describe the selling or marketing stages required to reclassify those sales from Channel 1 into Channel 2 or 3.  See <u>NTN</u>, 19 CIT at 1174, 903 F. Supp. at 70; <u>see also</u> 19 CFR § 351.412(c)(2) (stating that Commerce "will determine that sales are made at different levels of trade if they are made at different marketing stages (or their equivalent)").  Accordingly, Commerce has reasonably determined that the sample sales are properly classified in Channel 1.

---

[3]    If the Channel descriptions are incomplete or incorrect, then Timken should have argued and presented evidence substantiating such a claim.

The Court is also unpersuaded that Commerce is attempting to hold Timken to an excessive evidentiary standard.  Timken's interpretation of World Finer Foods is flawed.  World Finer Foods speaks to the reliability of corrective information proffered post-review when there was no verification of submissions during the administrative review.  See World Finer Foods, 24 CIT at 550 ("Ordinarily, there is no verification of submissions in an administrative review.  Therefore, there is no reason for Commerce to infer greater reliability in the information initially submitted as opposed to the information submitted for corrective purposes.").  When a verification has occurred, as it has here, the verified information must be considered more reliable than unverified information.  See id.; see also FAG Kugelfischer, 25 CIT at 106-7, 131 F. Supp. 2d at 133.  Failing to give due deference to verified information would be a tragic waste of time, resources, and energy with seemingly no end to the administrative review process.  Furthermore, the facts in World Finer Foods dealt with a respondent's submission of information to correct clerical or ministerial errors, which this Court has already stated is not the situation here.  See Timken, 28 CIT at ___, 318 F. Supp. 2d at 1279.

Timken bears the burden of showing sufficient evidence meriting an adjustment.  See NTN, 19 CIT at 1174, 903 F. Supp. at

70.  The Court agrees that the invoices submitted by Timken are of the kind of evidence that should be sufficient to support its claim.  The Court, however, finds that the invoices must fit within the verified Channel descriptions from the questionnaire. Moreover, Commerce has reasonably explained why the post-Final Results invoices do not support reclassifying the sample sales into another Channel.

**B.    Commerce Properly Classified Certain Sales to Large Rather Than to Small OEMs in Channel 1**

### 1.    Timken's Contentions

The second alleged classification error involves certain sales classified in Channel 1 as sales to a large OEM of auto-parts.  See Timken's Comments at 7.  Timken argues that Commerce should have classified these sales in Channel 2 as sales to a "small" OEM.  See Remand Determination at 14.  Timken asserts the "sales were shipped to a factory division of a large OEM that is involved in activities [that Timken] associates with small OEMs."  Id.  Timken states that it erred when making its internal classification because the customers had similar names.  See Timken's Comments at 7.  As evidence of this error, Timken submitted invoices and corresponding purchase orders showing that the sales in dispute were shipped to a small OEM.  See Remand Determination at 14.  Timken accordingly requests that Commerce reclassify these sales into Channel 2.  See id.

### 2.   Commerce's Contentions

Commerce asserts that Timken's claim to reclassify these sales from a large to a small OEM rest upon the size of the OEM's end product.  See Remand Determination at 15 & 19.  "Large" actually refers to the size of the manufacturer, regardless of the size of the end product.  See id. at 7.  Timken did not submit "factual information to substantiate that the party identified on the invoice should be considered a small OEM as opposed to a large OEM" to warrant a reclassification.  Id. at 14-15.  Furthermore, Timken's claim does not focus on the marketing stage and selling functions, which is how Commerce differentiates between LOT.  See id.  Accordingly, Commerce argues that Timken failed to meet its burden.

### 3.   Analysis

Timken has the burden to show a reclassification is warranted.  See NTN, 19 CIT at 1174, 903 F. Supp. at 70.  Merely submitting invoices, written in German with scant explanations, is not sufficient to explain why the sales to these large OEMs should be reclassified in Channel 2.  Timken claims that these sales were shipped to a factory division of a large OEM.  Commerce, however, has reasonably explained why the invoices inadequately describe the marketing stages and selling functions of the sales to classify them as sales to a small OEM.  Commerce even admits that

bifurcation of sales to a single customer could be classified into different Channels. See Remand Determination at 15. If bifurcated, then sales made to a division of a large OEM could be classified as sales to a small OEM. Respondent still bears the burden of showing that a bifurcation is warranted. Here, Timken has not produced evidence showing the need for bifurcation. Furthermore, Timken did not challenge Commerce's explanation that Channels are defined by the size of different customers and not by the size of the end product. Accordingly, the Court finds Commerce's explanation is reasonable and supported by substantial evidence.

**C. Commerce Properly Classified the Sales of Replacement Parts in Channel 1**

**1. Timken's Contentions**

The third alleged classification error deals with replacement parts sold to a large OEM and classified under Channel 1. See Remand Determination at 15-16. Timken asserts that these sales were for replacement, repair, or spare parts; not for the manufacture of original equipment. See id. Rather than being classified in Channel 1, Timken claims that the replacement parts should have been classified in Channel 3. See id. at 16. To substantiate its claim, Timken submitted invoices internally marked in different ways to indicate that the products sold were to be used as replacement parts. See id. at 15-16.

### 2.    Commerce's Contentions

Commerce asserts that after reviewing the invoices and questionnaire responses, a reclassification to Channel 3 is unsupported. See Remand Determination at 16. Timken has failed to explain the marketing stages or selling functions of the replacement parts and how such sales would merit a reclassification to Channel 3.[4] See id. at 20. Furthermore, the invoices do not support the type of sales described in Channel 3 activities, which are sales to distributors or competing producers. See id. at 16-17. Commerce argues that the invoices submitted do not substantiate Timken's claim that the products were used only as replacement parts and not for normal production activities. See id. at 17.

### 3.    Analysis

Timken has the burden to show that the products were indeed marketed and sold as replacement parts. See NTN, 19 CIT at 1174, 903 F. Supp. at 70. A mere notation or shipping code on an invoice was deemed inadequate by Commerce for explaining the marketing and selling functions associated with these sales. See Remand Determination at 15-17. Commerce has repeatedly stated that its focus, when determining LOT and Channels, is the marketing and

---

[4] Such parts were originally sold through Channel 1 "presumably after the requisite plant certification." See Remand Determination at 20.

selling functions associated with home-market sales.  See id. at 15
& 19.   To reclassify certain sales into another Channel, Timken
must focus on the marketing stages.  See 19 CFR § 351.412(c)(2).
While  replacement  parts  are  not  listed  in  the  Channel  3
description, they are also not in the Channel 1 or 2 descriptions.
Thus, Timken's argument, which they have failed to make, must also
include why the replacement sales are more appropriately classified
in Channel 3 as opposed to Channel 1.  Accordingly, the Court finds
that Commerce's interpretation is reasonable because Commerce has
defined Channels on the size of buyers within each consumer group.

## IV.  CONCLUSION

Commerce  has  sufficiently  met  its  burden  of  reviewing  the
disputed  classifications  with  the  post-Final Results  invoices
submitted by Timken.   Commerce has also provided a reasonable
explanation of its determination that the antidumping margin is as
accurate  as  possible  with  no  need  to  make  further  corrections.
Judgment will be entered accordingly.


                                        /s/ Nicholas Tsoucalas
                                    **NICHOLAS TSOUCALAS**
                                    **SENIOR JUDGE**

Dated:     October 29, 2004
           New York, New York